UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                   Plaintiff                Case No. 06-20475
                                           Judge Avern Cohn

v.

KURT SKOTZKE,

                   Defendant.
_____/

**MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS
THE INDICTMENT OR SUPPRESS EVIDENCE**

**I. INTRODUCTION**

This is a criminal case.  Defendant Kurt Skotzke is charged under 18 U.S.C. §

2252A as follows: (1) attempted receipt of child pornography; (2) receipt of child

pornography; and (3) possession of child pornography.  Skotzke moves to dismiss the

indictment and/or to suppress the evidence obtained during the execution of the search

warrant that led to his arrest and indictment.  In his first motion, Skotzke argues that the

warrant was obtained in violation of his Forth Amendment rights because of lack of

probable cause.  In his second motion Skotzke argues that the indictment should be

dismissed because the law enforcement agents conducting the investigation acted

outrageously and that the agent submitting the warrant affidavit misled the magistrate

judge who signed the it.

For the reasons that follow, the motions will be denied.

## II.  BACKGROUND

Agent Barry Burnette, Jr. (Burnette) of the United States Immigration and Customs Enforcement/ Department of Homeland Security (ICE/DHS) signed the affidavit on which the search warrant was issued by a magistrate judge.  The facts described below reflect the contents of the affidavit.  The warrant was executed on September 2, 2004 which resulted in the seizure of computer equipment, VHS tapes, and a roll of undeveloped 35mm film.

### A.  The Government's Investigation of the PedoShop Website

(1) On November 4, 2003 Special Agent Ken Rochford (Rochford) of the ICE/DHS, while undercover, located an Internet web-site titled "PedoShop" at "http://207.36.155.58/agrd/."  The site was dedicated to the sale of video compact discs (VCDs) displaying depictions of child pornography in both videos and pictures.  The site contained a catalog of over 50 VCDs.  Each catalog selection included a hyperlink that stated "click here for sample."  Upon clicking the hyperlink, explicit photographs for that video were shown on screen.

(2) On November 6, 2003 Rochford returned to the PedoShop website, clicked onto the "Make Order" link and placed an order for VCD # 11.

(3) On November 6, 2003 Rochford received a reply e-mail from the address "tillo@sinet.spb.ru"  (Internet Protocol Address 81.222.241.59), with payment instructions via Western Union to Vladimir Kabysh (Kabysh), a Russian national living in Ecuador.  Rochford sent a money order to Kabysh for $129.00 via Western Union.

(4) On November 11, 2003 Rochford received an e-mail from "tillo@sinet.spb.ru" stating that VCD # 11 was unavailable and that he was being sent VCD # 16.  The

2

PedoShop website described the video as containing explicit sexual acts involving children.

(5) On January 12, 2004 Rochford received VCD # 16 via internet download and confirmed that the VCD depicted children engaging in explicit sexual activity.

(6) On January 12, 2004 Rochford attempted to re-access the PedoShop website but was unsuccessful.  He then e-mailed "tillo@sinet.spb.ru" requesting the new website name and location.  He received a reply from "tillo@sinet.spb.ru" advising him to go to "http://darkshop.net" to access the PedoShop website.

(7) On March 3, 2004 Rochford went to "http://darkshop.net." The caption of the website said "PedoShop" and appeared to be identical to the PedoShop website found at "http://207.36.155.58/agrd/."  Rochford clicked on the "Make Order" link and ordered  two VCDs.  He was instructed via the website to contact "darkshop2005@Yahoo.com" to place an order.

(8) On March 29, 2004 Rochford received a reply email from "darkshop2005@yahoo.com" which told him to reply to that address with his VCD selections from "http://darkshop.net"; and that he would then be given payment instructions.  Rochford placed an order for VCDs # 43 and # 45, which were described on the PedoShop website as containing depictions of young girls engaged in explicit sexual acts.

## B.  The Government's Investigation of Kurt Skotzke

(1) On February 4, 2004 Rochford issued a summons to Western Union for all the transactions originating and terminating with Kabysh.

(2) On February 24, 2004 Western Union provided Rochford with a disc

containing one year of transactions to and from Kabysh.  Rochford located four transactions on the disc between Skotzke and Kabysh.  In particular Skotzke sent four money orders of $260.00 to Kabysh on July 11, 2003; August 18, 2003; October 27, 2003; and November 16, 2003.

(3)  On March 24, 2004 Rochford issued a grand jury subpoena to Western Union Financial Services for credit card numbers and card holders associated with the Western Union transactions he found on the disc.  On April 12, 2004 Rochford received the internet logs for the four money orders sent from Skotzke to Kabysh.  The internet logs showed  that Skotzke had used his credit card to send the money orders to Kabysh. The internet logs also showed Skotzke's credit card number, address, and home telephone number.

(4) On April 2, 2004 SA Rochford obtained a search warrant directed to Yahoo Inc., for the account  "darkshop2005@yahoo.com."  On April 8, 2004 Yahoo Inc. provided the account.  Rochford found two e-mails from Kurt Skotzke at "kpskotzke@eathlink.net" to "darkshop.net".[1]  In these emails, dated March 8 and 28, 2004, Skotzke stated that he had previously ordered tapes #34 and # 44 from the PedoShop catalog and would like to receive download instructions for these videos. He also expressed interest in purchasing two more videos.

Rochford's search of the account also showed that on March 29, 2004, Skotzke received an email at "kpskotzke@eathlink.net" from "darkshop2005@yahoo.com" which

---

[1]  The e-mails, which were not provided to the magistrate judge, actually show that on March 8, 2004 Skotzke e-mailed "till@sinet.spb.ru", and on March 28, 2004 he e-mailed "darkshop2005@yahoo.com".

4

contained internet links and a password for the two downloads.  Rochford reviewed the website catalog at the PedoShop website for the VCD's matching # 34 and #44 and confirmed from their descriptions and sample pictures that they depicted explicit sexual conduct between children.

(5) On May 28 2004 Agent Robert Swain[2] verified the location of Skotzke's residence, which was the same address as listed in the Western Union records of transactions.

(6)  Burnett also included in the affidavit a section headed, "Characteristics of Child Pornography Collectors in General" in which he stated that:

> Pursuant to my training and experience ... Individuals involved in the sexual exploitation of children through child pornography rarely, if ever, dispose of their sexually explicit material, especially when they are used in the exploitation of children ... [also] [t]hese individuals rarely destroy these materials due to the psychological support and reinforcement they provide.

### III.  ANALYSIS

### A.  Whether There was Probable Cause to Issue the Search Warrant

### 1.  The Standard

The Fourth Amendment guarantees that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In Illinois v. Gates, 462 U.S. 213, 232 (1983),  the Supreme Court explained that probable cause is "a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Accordingly, the Supreme Court in Gates rejected previous, more rigid tests in favor of

---

[2]  The name of the agency Swain works was not stated in the affidavit.

the "totality-of-the-circumstances" test.  Id. at 238.  When faced with an application and affidavit for a search warrant, "the task of the issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id.

Generally, a magistrate judge's determination as to probable cause is entitled to deference by the reviewing court.  Id. at 238-239.   The reviewing court's role is limited to deciding "whether the evidence as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause."  Id.;  Massachusetts v. Upton, 466 U.S. 727, 733 (1984).

## 2.  Arguments

### a.

Skotzke argues that there was no probable cause for the issuance of the search warrant because there was no concrete evidence to show that he had transmitted or received prohibited images.  In particular, Skotzke says that there was no evidence that he received or read the e-mail from "darkshop2005@yahoo.com" dated March 29, 2004, or that he utilized the instruction or password in that e-mail to download the referenced VCDs.  Moreover, Rochford never attempted to use the instructions and never determined whether the password was valid.

Skotzke relies on United States v. Perez, 247 F. Supp. 2d 459 (S.D.N.Y. 2003), in which the court said that the mere subscription and membership to a site where prohibited images were available did not support a finding of probable cause.

6

Skotzke also says that the facts in his case are comparable to the facts in <u>United States v. Weber</u>, 923 F.2d 1338 (9th Cir. 1991), in which the defendant placed an order for child pornography in response to a Government-generated advertisement.  <u>Id</u>. at 1340.  The defendant had been sent apparent child pornography two years earlier, but never claimed the materials.  <u>Id</u>.  A search warrant was issued and executed shortly after an agent, dressed as a delivery person delivered the materials.  <u>Id</u>. at 1341.  During the search, agents found the materials sent by the government on the defendant's kitchen counter, unopened.  <u>Id</u>.  Under these circumstances, the court said that there was not a fair probability that the contraband containing child pornography listed in the affidavit, <u>other than the materials the government delivered</u>, would be found.  <u>Id</u>. at 1344.

**b.**

The Government in response argues that the warrant was issued on probable cause.  First, the Government points out that Skotzke does not challenge that the PedoShop website is dedicated to the sale of VCDs depicting child pornography and that sample images of the VCDs can be viewed from the website.

Second, the Government says that there was evidence that Skotzke intended to receive child pornography because he ordered VCDs from the PedoShop website and specifically requested information on how to download the VCDs in his e-mails on March 8, and March 28.  The Government says that an individual would not request a password to obtain access to a file that he had no interest in accessing.  Skotzke was sent two links and a password from "darkshop2005@yahoo.com" in response to his request.  Skotzke also expressed an interest in ordering more VCD's.

The Government also says there is a high probability that Skotzke purchased and

actually received material from the Pedophile website because on 4 separate occasions he made payments to Kabysh through Western Union.  During his investigation, Rochford purchased a VCD containing child pornography from Kabysh through Western Union.  Rochford paid $129.00 for the VCD.  Skotzke made payments of $260.00, which is the price of two VCDs.

The Government relies on United States v. Froman, 355 F.3d 882, 890-91 (5th Cir. 2004), and United States v. Shields, 458 F. 3d 269, 274, 278-79 (3rd Cir. 2006), in which the courts held that membership or voluntary registration to child pornography websites is a factor which increases the fair probability that the person downloaded available pornographic images.  The Government says that the facts in this case are stronger than in Froman and Shields considering that Skotzke specifically ordered VCDs containing child pornography, requested the download instructions for the VCDs, and sent multiple money orders to a distributor of child pornography.

### 3.  Resolution

The warrant was issued on probable cause.  The affidavit included information establishing a fair probability that Skotzke intended to receive, and did in fact receive VCD's containing depictions of child pornography.

First, the affidavit included information that on two occasions Skotzke e-mailed "darkshop2005@yahoo.com," an address connected to a PedoShop – a website that is undisputably dedicated to the sale of child pornography.  Importantly, Rochford established from his investigation that from the "darkshop2005@yahoo.com" address, an individual could place orders for VCDs listed in the PedoShop website catalog and obtain payment instructions.  Rochford also established that after making a payment for a VCD,

8

an individual would be sent a downloadable link to the ordered VCD from that address. Skotzke stated in his e-mails to "darkshop2005@yahoo.com" that he had ordered tapes # 34 and # 44, and he requested the download instructions for these videos. The affidavit states that Rochford verified that these numbers correlated to VCD's containing child pornography in the PedoShop website catalog. The affidavit also states that Skotzke was subsequently sent an e-mail from "darkshop2005@yahoo.com" which included two links and a password to items on the website.

Next, the affidavit related that Skotzke sent multiple money orders to Kabysh in amounts correlating with the purchase price for 2 VCDs. Kabysh is the same person that Rockford was instructed to send money orders to when he ordered VCDs from the PedoShop website.

The facts here are distinguishable from those in Perez, 247 F. Supp 2d 459, a case upon which Skotzke relies. In Perez, the court found that there was not probable cause to issue a warrant because the website the defendant had subscribed to had the option for the subscriber to not receive e-mails from the site. Id. at 471. Perez had selected this option, and there was no evidence that he requested or downloaded any child pornography. Id. Here, the affidavit says that Skotzke specifically ordered VCDs and requested instructions on how to download them. He also expressed an interest in ordering more materials.

Additionally, Skotzke's transactions with Kabysh increases the fair probability that Skotzke actually received child pornography on multiple occasions. These transactions also distinguish this case from Weber, 923 F. 2d 1338, another case upon which Skotzke relies. In Weber, there was no evidence that the defendant possessed child

9

pornography (other than the materials delivered by the Government) because the affidavit stated only that Weber had failed to pick up a package containing apparent child pornography some two years earlier.  Id.  at 1340-41.

Considering the totality of the circumstances, the magistrate judge had a substantial basis upon which to issue the warrant.  On this set of facts, the magistrate judge could have reasonably concluded that Skotzke collected and received depictions of child pornography, and that they were in his possession at his home.

### C.  Whether the Government's Conduct was Outrageous

### 1.  The Standard

A court may dismiss an indictment on due process grounds when "the conduct of law enforcement agent is so outrageous that due process principles would absolutely bar the Government from invoking the judicial processes to obtain a conviction."
United States v. Russell, 411 U.S. 423, 431-32 (1973).  The Court of Appeals for the Sixth Circuit considers four factors in determining if Government conduct is outrageous:

> (1) the need for the type of government conduct in relationship to the criminal activity; (2) the preexistence of a criminal enterprise; (3) the level of the direction or control of the criminal enterprise by the government; (4) the impact of the government activity to create the commission of the criminal activity.

United States v. Johnson, 855 F. 2d 299, 305 (6th Cir. 1988) (additional citations omitted).

### 2.  Arguments

### a.

Skotzke argues that the indictment must be dismissed because Rochford's actions were outrageous.  Skotzke says that Rochford violated 18 U.S.C. § 2252A when he purchased VCDs containing child pornography during his investigation.  Thus, Rochford's conduct is outrageous because he contributed to the demand for such materials in the marketplace, which is what the law intended to eliminate.  Moreover, Skotzke says that Rochford did not attempt to shut down any website or take any other action to prevent access to the materials available online.  Skotzke says that it should be incumbent on the Government to utilize a method of enforcement which does not promote the industry it is attempting to eliminate.

**b.**

The Government responds that Rochford's undercover purchases from the PedoShop website were necessary to detect and investigate violations of child pornography laws.  The Government argues that Rochford's sole purpose in purchasing the videos was to shut down the PedoShop website and to identify its customers -- a goal which cannot be accomplished unless the government has confirmed that the website did in fact sell illegal material.  Moreover, Rochford's purchase also enabled the Government to track potential purchasers of child pornography by obtaining transaction histories from Western Union.

Next, the Government says that the PedoShop website existed and was in operation prior to Rochford's discovery of the site and would have continued with or without his undercover activity.  Moreover, the Government says that Rochford's action had no bearing on Skotzke's illegal receipt and possession of child pornography.  Therefore there is no issue of whether the Government improperly induced Skotzke to

11

commit illegal acts.

### 3. Resolution

Skotzke's arguments are meritless.  In <u>United States v. Moore</u>, 916 F. 2d 1131, 1139 (6th Cir. 1990), the Court of Appeals for the Sixth Circuit held that the secretive nature of those who sell, purchase, and traffic in child pornography makes undercover Government activity necessary in order to detect and investigate violations. There was nothing outrageous in Rochford's investigation of the PedoShop website and its suspected patrons.

### C.  Whether Burnette's Affidavit included Deliberately or Recklessly False Statements

### 1.  The Standard

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court held that a search based on a warrant that contains deliberately or recklessly false allegations is invalid unless the remaining portions of the affidavit provide probable cause.  Thus, a court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test.  First, the court must determine whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements. Allegations of negligence or innocent mistake are insufficient.  <u>Id</u>. at 155-56, 171-72. Next, the court must determine whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant.  <u>Id.</u> at 171-72.[3]

---

[3]  Skotzke did not request a formal Franks hearing.  However, at the motion hearing, Skotzke's attorney extensively examined Agent Burnette about the underlying affidavit.

12

Skotzke argues that the evidence seized from his home should be suppressed because the affidavit was intentionally or recklessly false or misleading for two reasons. Each arguments will be addressed in turn.

### 2.  The Summarization of Skotzke's E-mails [4]

#### a.  Arguments

Skotzke says that the Burnette included false statements in his affidavit regarding the content of the e-mail Skotzke sent to  "till@sinet.spb.ru" on March 8, 2004, and the e-mail he sent to "darkshop2005@yahoo.com" on March, 28 2004.  The affidavit, in paragraphs 29 and 30 states:

> 29.  On April 2, 2004 SA Rochford Issued a search warrant o Yahoo Inc. For the Yahoo account of "darkshop2005@Yahoo.com."  On April 8, 2004, SA Rochford received the returns from this search warrant.  Upon examining these returns, SA Rochford discovered two e-mails from Kurt SKOTZKE, dated March 8, 2004 and March 28, 2004, utilizing the E-mail address kpskotzke@earthlink.net to darkshop.net.

> 30.  In these E-Mails SKOTZKE stated that he had previously ordered <u>tapes</u> 34 and 44 from the <u>PedoShop catalog</u> and would like to receive the download instructions for these <u>videos</u>.  SKOTZKE also expresses interest in purchasing two more <u>videos</u>. (Underlining added).

Skotzke points out that in his e-mail dated March 8, 2004 to "till@sinet.spb.ru", he actually wrote:

> My order for <u>items</u> # 34 & #44 dated 11 Dec 03 has not arrived.  I would like to try to download <u>the product</u>.  Please e-mail with instructions.  I would also like to place an order for two more <u>items</u> from your list.  Please e-mail with payment instructions.

And in his e-mail dated March 28, 2004 to "darkshop2005@yahoo.com", he actually

---

[4]Skotzke submitted the following argument, by permission of the Court, after the motion hearing.  Accordingly, the Government did not have the opportunity to respond.

wrote:

> Unfortunately the <u>product</u> did not arrive.  I would like to attempt a download.
> Please e-mail instructions for <u>items</u> # 34 [and]  # 44

Skotzke argues that Burnette intentionally and recklessly disregarded the truth by stating

that Skotzke had ordered tapes and videos from the PedoShop catalog when in fact,

Skotzke does not specify what he ordered or from what source.

### b.  Resolution

With regard to the first step of the <u>Franks</u> test, Skotzke has not established that

Agent Burnette's conclusion in paragraph #29 that Skotzke characterization of "items"

# 34 and # 44 as downloadable tapes/videos was a deliberately false or a reckless

disregard for the truth.  Instead, Burnette's summarization of Skotzke's e-mails appears

to be nothing more than the result of his having drawn logical inferences under the facts.

<u>See, Blakeney v. United States</u>, 1999 WL 777404 * 2-3 (6th Cir. 1999) (officer who

stated in an affidavit that he observed defendant place a bag later found to contain stolen

jewelry into a dumpster behind a department store, but in fact had only observed the

defendant carry the bag behind grocery store and emerge without the bag, made a

logical inference under the facts that the defendant had placed the bag into the

dumpster.)  First, Skotzke addressed his e-mails to "darkshop2005@yahoo.com," the

address Rochford was referred to when he initiated his order for VCDs from the

PedoShop website.  Next, while Skotzke did not state that he had ordered  "tapes", he

did state that he ordered "items" and "products" which he identified as # 34 and # 44.

The VCDs on the PedoShop website catalog were identified by numbers.  Moreover,

Skotzke stated that he wanted to "download" # 34 and #44.  Rochford established that

14

after placing an order for VCDs identified by numbers in the PedoShop website catalog, he was sent a downloadable link to view those VCDs.

With regard to the second step of the Franks test, even omitting the allegedly false or misleading statement – here paragraphs # 28 and # 29, there is still sufficient content in the affidavit to support a finding of probable cause.  Skotzke does not challenge the following information established by Rochford's investigation :

(1) PedoShop is a website that was undisputably dedicated to the sale of child pornography.

(2) Upon clicking the "Make Order" link within the PedoShop website, a person would be directed to e-mail "darkshop2005@yahoo.com"[5]  to place orders for VCDs listed in the PedoShop website catalog.

(3)  Upon sending an order to "darkshop2005@yahoo.com", a person would receive a response and instruction to send a money order via Western Union to Kabysh.

(4) Upon sending a money order to Kabysh, a person would be sent a downloadable link to view the VCD ordered from the PedoShop website.

(5) One VCD costs $ 129.00.

(6) Skotzke received an e-mail from "darkshop2005@yahoo.com" which included two links and a password to download his "order."

(7) Skotzke sent multiple money orders to Kabysh for $260.00, the price of 2 VCDs.

Under the totality of the circumstances, the unchallenged information in the affidavit was sufficient to provide reasonable grounds that Skotzke collected, received, and kept in his home, child pornography.

**3. The Omission of Information Regarding How Burnette Learned of Rochford's**

---

[5] Rochford established that at times up to November 11, 2003, a person would be directed to e-mail "tillo@sinet.spb.ru".

15

### Investigation, and Rochford's Training and Experience

#### a. Arguments

##### i.

Skotzke argues that Burnette mislead the magistrate judge by failing to state how he learned of Rochford's investigation, and by failing to establish Rochford's training, experience or reliability. Skotzke compares this case to <u>United States v. Jenkins</u>, 728 F. 2d 396, 400 n.2 (6th Cir. 1984), in which one officer investigated a crime and related this information to a second officer. The second officer then prepared and presented an affidavit to a magistrate judge, in which the second officer portrayed the investigation as if he had conducted it. <u>Id</u>. The second officer did not state in the affidavit that the first officer had conducted the investigation. <u>Id</u>. In this situation, the district court held that the second officer had deliberately mislead the magistrate judge. <u>Id.</u>

##### ii.

In response, the Government points out that Burnette explicitly stated in paragraph # 33 of the affidavit that he consulted with Rochford about the nature of the videos that Skotzke referenced in his e-mails. The Government says that it would be logical to infer from this statement that Burnette's description of the Rochford's investigation was based on his consultation with Rochford.

Moreover, the Government says that it was not misleading for Burnette to describe Rochford's investigation because information from one agent to another is considered "a distinction without difference." <u>United States v. Cummins</u>, 912 F. 3d 98 (6th Cir. 1990).

#### b. Resolution

16

Skotzke has not established that the magistrate judge was mislead by Burnette's failure to state how he received information regarding Rochford's investigation or to include information specifically establishing Rochford's training and experience.  First, Burnette did not conceal Rochford's role in the investigation, which makes this case distinguishable from Jenkins.  Second, Burnette mentioned that he consulted Rochford. Burnette specifically notes in paragraph # 33:

> Based on my training and consultation with SA Rochford and other Special Agents familiar with child pornography investigation involving the Internet ... individuals involved in the collection and distribution of child pornography almost always maintain and possess their materials in a place considered secure, most frequently within the privacy and security of their own homes.

While this says that Burnette consulted Rochford regarding the characteristics of child pornography collectors, it would be reasonable for the reviewing magistrate judge to infer that he also consulted Rochford regarding the rest of Rochford's investigation of Skotzke.

Moreover, in paragraph # 33 Burnette also says that Rochford was familiar with child pornography investigations.  While the affidavit did not include a specific statement as to Rochford's training and credentials, it reasonably implied that Rochford was trained since he was familiar with other child pornography investigations.  Moreover, in paragraph #19, Burnette stated that Rochford received permission to make "another undercover purchase from the PedoShop catalog website."  It would be reasonable for the magistrate judge to infer that Rochford's investigation was being adequately supervised by his superiors.

17

## IV.  Conclusion [6]

For the reasons stated above, Shozke's motions are DENIED.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: March 01, 2007
        Detroit, Michigan.

---

[6] Having found probable cause existed to issue the warrant, an analysis of whether the good faith exception applies is not necessary.

18